UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
IN RE: FYRE FESTIVAL LITIGATION

                                                    17-cv-3296 (PKC)

                                                    OPINION AND
                                                    <u>ORDER</u>


-----------------------------------------------------------x

CASTEL, U.S.D.J.

        This Court dismissed plaintiffs' Second Consolidated Amended Class Action

Complaint ("SCAC") against individual defendants Jeffrey Atkins (known as Ja Rule) and Grant

Margolin with prejudice, and granted plaintiffs limited leave to replead with respect to particular

allegations against defendant Atkins.  (Opinion and Order of July 10, 2019 (the "July 10 Order");

Doc 90); <u>In re Fyre Festival Litig.</u>, No. 17-cv-3296 (PKC), 2019 WL 3006629 (S.D.N.Y. July

10, 2019).

        Fairly read, the SCAC alleges an overly-ambitious plan for the Fyre Festival that

became a fraudulent scheme when one or more participants learned that the luxury experience

they had promised was no longer feasible, but continued to market the Festival with statements

they knew to be false.  For each plaintiff, the moment when he or she learned of a statement

(later proved to have been false) and acted in reliance upon it—for example, by buying a ticket—

may be different.  This Court rejected plaintiffs' conclusory assertions that they relied on

defendants' representations about the Festival as insufficient to state a claim for fraud.  (Doc 90

at 15; Doc 56 ¶¶ 102, 144.)  In the case of Margolin, plaintiffs failed to allege a false statement

with the particularity required by Rule 9(b), Fed. R. Civ. P., and, in the case of Atkins, plaintiffs

alleged an actionable false statement, but failed to allege that they acted in reliance thereon.

Plaintiffs now move for reconsideration of the dismissal of Margolin (Doc 100) and for leave to file a Third Consolidated Amended Class Action Complaint ("TCAC") amending the claims against Atkins.  (Docs 102-104.)  For the reasons set forth below, plaintiffs' motions will be denied.

## MOTION FOR RECONSIDERATION

I.   <u>Legal Standard</u>

Plaintiffs move for reconsideration pursuant to Rules 59(e) and 60(b), Fed. R. Civ. P.  (Doc 100 at 1.)  The motion will be construed as brought under Local Rule 6.3. <u>Kassman v. KPMG LLP</u>, No. 11 Civ. 3743 (LGS), 2015 WL 5775866, at *1 (S.D.N.Y. Oct. 2, 2015).  "The standards for relief under Local Rule 6.3 and Rule 59(e) are identical."  <u>Burke v. Solomon Acosta & FASCore/Great W. & MTA/NYC Transit Auth.</u>, No. 07 CIV. 9933 (PKC), 2009 WL 10696111, at *1 (S.D.N.Y. Apr. 23, 2009), <u>aff'd sub nom.</u> <u>Burke v. Acosta</u>, 377 F. App'x 52 (2d Cir. 2010) (internal quotation marks and citation omitted).  Motions for reconsideration are held to strict standards, "and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir. 1995).  Motions for reconsideration are not vehicles for the moving party to relitigate an issue the Court already decided.  <u>Cordero v. Astrue</u>, 574 F. Supp. 2d 373, 380 (S.D.N.Y. 2008); <u>see also</u> <u>Shrader</u>, 70 F.3d at 257.

A motion for reconsideration may be granted based upon "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  <u>Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.</u>, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks and citation omitted); <u>see also</u> <u>NEM Re Receivables, LLC</u>

v. Fortress Re, Inc., 187 F. Supp. 3d 390, 396-97 (S.D.N.Y. 2016) (analyzing a motion for

reconsideration under Fed. R. Civ. P. 59(e) and Local Rule 6.3 under these three grounds).

Plaintiffs have not shown that reconsideration is warranted here.

II.   Availability of New Evidence

   "New evidence" must be "'evidence that was truly newly discovered or could not

have been found by due diligence.'"   NEM Re Receivables, LLC v. Fortress Re, Inc., 187 F.

Supp. 3d 390, 396 (S.D.N.Y. 2016) (quoting Space Hunters, Inc. v. U.S., 500 F. App'x 76, 81

(2d Cir. 2012)).   The evidence to which plaintiffs now point is neither properly considered on a

motion for reconsideration nor "new."

  A.   Plaintiffs' and Abbas Ali's Declarations

   Appended to plaintiffs' motion for reconsideration are three declarations—two

from named plaintiffs Ritu Jutla and Daniel Jung, and one from putative class member Abbas

Ali—along with a declaration from plaintiffs' attorney.  Local Rule 6.3 provides that "[n]o

affidavits shall be filed by any party unless directed by the Court."  Where a "court did not direct

any such filings, nor did [the party] request permission to submit a declaration with his motion

for reconsideration," the court "does not consider the declaration or accompanying exhibit in

deciding [the] motion."  Ramasamy v. Essar Glob. Ltd., No. 11 Civ. 3912 (JSR), 2012 WL

168173, at *1, n.1 (S.D.N.Y. May 8, 2012).

   Even if the Court were to consider these declarations, they do not provide the

particularity that the Court found lacking in plaintiffs' SCAC.  (Doc 90 at 9-13.)  They do not

state when a particular named plaintiff relied on any individual statement by Margolin.

(Doc 101-2.)  These declarations do not present "new evidence" that supply the missing

particulars that the Court previously identified, and thus do not provide a basis for the Court to reconsider its July 10 Order.[1]

    B.  <u>Emails from Jacqueline Veit to Plaintiffs' Counsel</u>

        In deciding the motions to dismiss, this Court afforded defendant Margolin the special solicitude to which a <u>pro</u> <u>se</u> party is entitled.  On their motion to reconsider, plaintiffs submit emails between their counsel and Jacqueline Veit of the law firm Golenbock Eiseman Assor Bell & Peskoe LLP.  (Doc 101-1.)  Plaintiffs argue that Ms. Veit has been representing defendant Margolin in this action, and therefore, that Margolin is not actually a <u>pro</u> <u>se</u> party. (Doc 100 at 3-4, 14-15.)  Specifically, plaintiffs state that Ms. Veit emailed plaintiffs' counsel after the Court issued the July 10 Order, asking plaintiffs to remove Margolin's name and the allegations against him from their proposed TCAC.  (Doc 100 at 3.)  As a result, plaintiffs argue, Margolin is actually a represented party and has "perpetrated a fraud on this Court" by proceeding as a <u>pro</u> <u>se</u> litigant.  (<u>Id.</u>)

        Plaintiffs' argument that Margolin has "perpetrated a fraud on this Court" by holding himself out as a <u>pro</u> <u>se</u> defendant is baseless.  Margolin's receipt of legal assistance from Ms. Veit's firm was disclosed to the Court and plaintiffs' counsel in footnote one to Margolin's memorandum of law in support of his motion to dismiss.  (Doc 74 at 1, n.1.)  Simply because Margolin has received assistance in drafting his papers does not mean that he is "represented" in this action.  Where, for example, a defendant "was assisted in preparing his answer to the complaint and opposition to summary judgment" by an attorney, he was still considered "technically <u>pro</u> <u>se</u>."  <u>CIT Grp./Commercial Servs., Inc. v. Prisco</u>, 640 F. Supp. 2d. 401, 407 (S.D.N.Y. 2009).

---

[1] The Court also notes that as named plaintiffs, Jung and Jutla's own statements are not "new," as this information was always available to plaintiffs and their counsel.

Margolin's status as a <u>pro se</u> litigant was not a deciding factor in the Court's July 10 Order. The Court ruled as it did because plaintiffs failed to attribute specific statements to Margolin, to plead Margolin's "involvement in the alleged fraud . . . with requisite particularity," or to establish "good cause for further leave to amend . . . [to] add allegations [against] Margolin." (Doc 90 at 12, 19, 31.) Margolin's status as <u>pro se</u> was collateral to the failures of plaintiffs' pleading. (<u>See id.</u> at 31: "Margolin is proceeding pro se and would be prejudiced by further delay in this action and additional briefing. This is particularly true considering that the new allegations do not appear to add anything that would correct the deficiencies leading to dismissal of claims against Margolin.") Therefore, Margolin's <u>pro se</u> status and assistance he has received from Ms. Veit are not a basis for reconsideration of the Court's July 10 Order.

### C.   Fyre Festival Documentaries

Plaintiffs further contend that two documentaries about the Festival, both of which were released in January 2019, are sources of "new evidence" of allegedly false statements by Margolin on which they relied.[2] (Doc 100 at 10.) However, these documentaries are neither new evidence, nor do they supply missing particularities or correct deficiencies in the SCAC.

First, documentary films released over six months before the Court issued its motion to dismiss decision are not "new evidence." "'New evidence' is evidence that existed at the time of the motion, but was unavailable to the movant when the Court made its previous ruling and could not have been found by due diligence." <u>Amtrust N. Am., Inc. v. Safebuilt Ins. Servs., Inc.</u>, No. 14 Civ. 09494 (CM), 2015 WL 9480080, at *2 (S.D.N.Y. Dec. 22, 2015).

---

[2] The Court takes judicial notice that the Hulu documentary "Fyre Fraud" was released on January 14, 2019, and the Netflix documentary "Fyre" was released on January 18, 2019. <u>See</u> <u>United States v. Bari</u>, 599 F.3d 176, 180-81 (2d Cir. 2010); Rule 201, Fed. R. Evid.

These films were available to plaintiffs—and to the entire public—well before the Court issued its July 10 Order.  Plaintiffs do not explain why, if they believed these documentaries contained material information relating to claims against Margolin, they did not, upon viewing the documentaries, seek leave to include the content in an amended pleading.  Plaintiffs cannot "treat the court's initial decision as the opening of a dialogue in which [they] may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings."  <u>Perdomo v. Decker</u>, No. 17 Civ. 3268 (AKH), 2017 WL 428088, at *1 (S.D.N.Y. Sept. 20, 2017) (internal quotation marks and citation omitted).

Second, the statements from the documentaries that plaintiffs attribute to Margolin fail to supply the missing particulars that the Court identified in its July 10 Order. Plaintiffs allege that the documentaries show Margolin, among others, continuing to market the Festival despite knowledge that it would not be the luxury experience they promised.  Plaintiffs state that the documentaries show Margolin "directing" members of the marketing team to post videos and generally acting as the "point guy" for Festival promotion, including by instructing the "F*ck Jerry" marketing team to delete negative comments about the Festival on social media.[3]  (Doc 100 at 5-6, 11.)

These allegations, like those in the SCAC, fail to point to any particular statements made specifically by Margolin, and instead re-state the general assertions that Margolin was heavily involved in Fyre marketing.  (Doc 90 at 12, 19.)  Additionally, these allegations fail to establish that any plaintiff specifically saw or heard a particular statement made by Margolin, nor when he or she relied on a statement to his or her detriment.  Plaintiffs

---

[3] In particular, plaintiffs point to Margolin's "1,000 word email" giving thematic and musical direction for the Festival's promotional video.  (Doc 100 at 5.)  As Margolin's opposition points out, this email has been public since 2017.  (Doc 96 at 11, n.4.)

point to the declarations appended to their motion for reconsideration as evidence that they "saw and relied upon these statements and deletions to their detriment." (Doc 100 at 7.) Even if the Court were to consider plaintiffs' declarations, they do not plausibly allege reasonable reliance. Conclusory and general allegations that, for example, plaintiffs recall relying on Margolin's statements between January and April 2017 about a promised "Treasure Hunt" at the Festival are insufficient; such allegations fail to plead with particularity a specific statement by Margolin, when it was made, who relied on it, and when. (Doc 100 at 7, 12-13.) An expenditure of money by a plaintiff to purchase tickets to the Festival before an employee of Fyre Media, Inc. made a particular statement or before the employee knew that the Festival would not take place as advertised would not give rise to a fraud claim against the employee. Plaintiffs have asserted a breach of contract claim against defendant Fyre Media, Inc. that is unaffected by the Court's July 10 Order. (Doc 56 ¶¶ 157-62.)

Plaintiffs instead rehash the same evidence that they relied on in the SCAC— screen shots of conversations between Margolin and "F*ck Jerry" and statements made on the Fyre Festival website—that the Court already found insufficient to sustain a fraud claim. (Doc 100 at 6, 12-13; Doc 90 at 31.) As the Court stated in its July 10 Order: "[Plaintiffs] provide no explanation of how their proposed additional allegations would correct the deficiencies in the SCAC including failure to allege misrepresentations attributable to Margolin. . . . They offer no explanation for why these screen shots were not available when they filed any of their previous Complaints or from where the screen shots came." (Doc 90 at 31.) Here again, plaintiffs do not establish that Margolin made any specific statement on which a plaintiff relied when purchasing his or her tickets or making other expenditures related to attending the Festival, or any particular point in time when such reliance may have occurred. As Margolin's opposition points out, these

allegations remain inadequate to sustain a fraud claim against him.  (Doc 96 at 10.)  Re-raising the same arguments and facts that the Court considered and previously rejected is not grounds for reconsideration.  <u>Sequa Corp. v. GBJ Corp.</u>, 156 F.3d 136, 144 (2d Cir. 1998).  For these reasons, the Court denies plaintiffs' motion to reconsider on the basis of new evidence.

III.   <u>Manifest Injustice</u>

        Plaintiffs assert that dismissing Margolin as a defendant constitutes manifest injustice.  No manifest injustice exists here.  Plaintiffs do not offer any additional facts as to Margolin that would support a fraud claim sufficient to meet the requirements of Rule 9(b), Fed. R. Civ. P.  Therefore, plaintiffs have not alleged they would suffer any injustice.  <u>Cf. Anwar v. Fairfield Greenwich Ltd.</u>, 745 F. Supp. 2d 379, 383-84 (S.D.N.Y. 2010) (granting reconsideration on the basis of preventing manifest injustice where an "oversight would . . . result in [] repleading claims against [defendants] that this [c]ourt has already found to be sufficient"); <u>Mikol v. Barnhart</u>, 554 F. Supp. 2d 498, 502-503 (S.D.N.Y. 2008) (granting reconsideration where a subsequent ALJ decision had not been "before the [c]ourt when the motion for judgment on the pleadings was decided" and that "might have an effect on the earlier unfavorable decision upon remand").

        Plaintiffs have not established the existence of new evidence that "might reasonably be expected to alter the conclusion reached by the [C]ourt" with respect to defendant Margolin.  <u>Shrader</u>, 70 F.3d at 257.  As a result, plaintiffs' motion for reconsideration of the Court's July 10 Order dismissing defendant Margolin is denied.

MOTION FOR LEAVE TO AMEND THE SCAC

      As explained in the Court's July 10 Order, defendant Atkins is alleged to have been a "founder, owner, director and a corporate officer of Fyre Media, and was responsible for overall business strategy." (Doc 90 at 2.)  Atkins was involved in promoting Fyre Festival on social media, including by posting to his Twitter account.  On April 27, 2017, the day before the Festival was scheduled to begin, Atkins posted: "The stage is set!!! In less than 24 hours, the first annual Fyre Festival begins.  #festivallife." (Id. at 4.)  The Court found that with respect to this Tweet, plaintiffs pled both a material misrepresentation with knowledge of its falsity and scienter, but failed to plead actual reliance.  (Id. at 13-16.)

      Plaintiffs had filed a complaint (Doc 1), a Consolidated Amended Complaint (Doc 47), and a SCAC (Doc 56) prior to the scheduling of the motion to dismiss.  This Court entered a Scheduling Order, pursuant to the authority in Rule 16(b)(3)(A), Fed. R. Civ. P., limiting the time to further move to amend the complaint to 21 days from the filing of the motions to dismiss.  (Order of July 13, 2018; Doc 59 ¶ 2); Parker v. Columbia Pictures Indus., 204 F.3d 326, 339-40 (2d Cir. 2000).  By operation of the Order, plaintiffs' time to move to further amend expired on August 8, 2018.  The Court's July 10 Order noted that plaintiffs had not demonstrated good cause to modify the deadline in the Scheduling Order, but granted plaintiffs limited leave to move to amend to add an "allegation that a particular plaintiff knew of [Atkins' April 27] Tweet and took some concrete action in reliance thereon." (Doc 90 at 32.)  Plaintiffs were also granted limited leave to move to amend their state law claims regarding the April 27 Tweet.  (Id.)

With their motion, plaintiffs have submitted a proposed TCAC. (Docs 102-104.) Defendant Atkins opposes this motion on the ground of futility. For reasons set forth below, plaintiffs' motion for leave to amend is denied.

I.   Legal Standard

In exercising discretion on a motion for leave to amend, the Court may "deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007). An amendment is futile if the pleading "could not withstand a motion to dismiss." Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002); see also Bellikoff v. Eaton Vance Corp., 481 F.3d 110, 118 (2d Cir. 2007) ("Leave to amend is especially inappropriate where, as here, plaintiffs' proposed amendments merely recycled versions of claims which had already fallen victim to a motion to dismiss.")

In the face of a futility argument, the focus of a motion for leave to amend is on the proposed pleading itself. "When the plaintiff has submitted a proposed amended complaint, the district judge may review that pleading for adequacy and need not allow its filing if it does not state a claim upon which relief can be granted. The adequacy of the proposed amended complaint, however, is to be judged by the same standards as those governing the adequacy of a filed pleading." Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991). When assessing a complaint's adequacy, it is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (internal quotation marks, alteration, and citation omitted).

II.   Plaintiffs Have Not Pled Reliance to Sustain a Common-Law Fraud Claim

The Court specifically counseled plaintiffs to "set forth in a proposed pleading allegations of reasonable reliance and causation as to each plaintiff."  (Doc 90 at 32.)  However, plaintiffs' proposed TCAC, which would be plaintiffs' fourth "bite at the proverbial apple," contains no such specific allegations.  Bellikoff, 481 F.3d at 118.  Three non-parties allege that they are members of the putative class, assert that they saw and relied on Atkins' April 27 Tweet when finalizing their travel and plans to attend the Festival.  (Doc 103 at 7-8.)  Two of the three members of the putative class are, as Atkins' opposition submission points out, "literally unnamed," as they identify themselves only as "Class member 1" and "Class member 2."  (Id.; Doc 95 at 4.)  The third member of the putative class is Abbas Ali.[4]  (Doc 103 at 8.)  Plaintiffs' proposed TCAC repeats these three putative class members' allegations of reliance on Atkins' Tweet throughout.  (See, e.g., Doc 104-1 ¶¶ 147-54; 192-202.)  Neither Class member 1, Class member 2, nor Ali seeks to be named as a plaintiff in this action.

Absent class members' allegations of reliance on Atkins' April 27 Tweet are insufficient for plaintiffs to state a fraud claim pursuant to Rule 9(b), Fed. R. Civ. P.  (Doc 90 at 15-16.)  At least one named plaintiff must establish that he or she can "plausibly allege" a claim. In re LIBOR-Based Fin. Instruments Antitrust Litig., 299 F. Supp. 3d 430, 459 (S.D.N.Y. 2018). Therefore, a plaintiff, i.e., a party to the action, must specifically plead that he or she relied on Atkins' Tweet; it is insufficient that an absent member of the putative class relied on the statement.  See In re Crazy Eddie Sec. Litig., 802 F. Supp. 804, 813 (E.D.N.Y. 1992) ("Because no named plaintiff has a common law claim on his or her own behalf, and because the named

---

[4] The Court notes that only Ali, and not unnamed Class member 1 or 2, submitted a declaration here.  (Doc 104, Ex. F.)  Footnote 6 in plaintiffs' brief states that "[p]laintiffs' counsel has not yet managed to obtain signed declarations from the following class members, counsel anticipates that these class members are willing to provide signed declarations before the parties bring a Motion for Summary Judgment."  (Doc 103 at 7, n.6.)

plaintiffs are unable to represent adequately class members who have such claims, if any such claimants exist, the common law claims are dismissed.")  Where, as here, "plaintiffs allege common-law fraud . . . [such] claims require proof of reliance . . . and in a class action, the reliance of each class member must be proved." Marcus v. AT & T Corp., 938 F. Supp. 1158, 1171 (S.D.N.Y. 1996), aff'd sub nom. Marcus v. AT&T Corp., 138 F.3d 46 (2d Cir. 1998). Throughout the proposed TCAC, plaintiffs repeat allegations that they and members of the proposed class relied on Atkins' Tweet when deciding to purchase travel tickets and make other expenditures related to the Festival.  (See Doc 104-1 ¶¶ 104, 147, 149, 212-13, 230-31, 251-53, 271-73, 295-97, 311-13.)  These allegations are conclusory and fail to remedy the shortcomings the Court's July 10 Order identified:  they do not state which, if any, named plaintiff relied on Atkins' Tweet, when such reliance occurred, or any particular injury a plaintiff suffered as a result.  (See Doc 90 at 15-16; 95 at 10-11.)  No class has been certified, and claims that unnamed class members relied on Atkins' Tweet "fail to provide Atkins notice of when and how an individual plaintiff relied upon the statement of April 27."  (Doc 90 at 16.)  These allegations do not establish that any particular plaintiff saw, read, or heard of Atkins' April 27 Tweet and took some action to his or her detriment in reliance thereon.  (Doc 90 at 16.)

III.    Plaintiffs' Proposed Amendments Do Not Satisfy Standing Requirements Under New York General Business Law § 349

Plaintiffs' motion does not specifically address their remaining state law claims against Atkins, save for the conclusory statement that plaintiffs' additional allegations in the TCAC "meet the level of particularity required to adequately allege fraud and their related state claims."  (Doc 103 at 7.)  A claim brought under section 349 of the New York General Business Law need not satisfy the particularity requirements of Rule 9(b), Fed. R. Civ. P. Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005).  But, as the Court explained in

its July 10 Order, New York plaintiffs must allege that they "saw statements by Atkins or Margolin while in New York" (the "place of deception" test), or that they made transactions that implicate New York law (the "transaction-based" test).  (Doc 90 at 28.)  Plaintiffs' TCAC does not plead any additional facts that show New York plaintiffs actually relied on Atkins' Tweet while in New York, or that they made expenditures in reliance on Atkins' Tweet that would implicate New York law.[5]

   The allegations of putative Class members 1 and 2 and Ali fail to state that any one of them was in New York when he or she relied on Atkins' Tweet, or completed transactions that would implicate New York law.  Ritu Jutla, a named plaintiff, states in her declaration in support of plaintiffs' motion for reconsideration, but notably not in the proposed TCAC, that she relied on Fyre Festival marketing, but her declaration is silent on Atkins' Tweet in particular.  (See Docs 100; 101-2 at 4; 104-1.)  Even if this declaration were incorporated into the TCAC, it fails to cure the specific deficiencies the Court previously identified with respect to reliance on Atkins' April 27, 2017 Tweet.  The declaration states generally that while residing in New York between January-April 2017, Jutla saw Fyre Festival marketing and decided to buy a ticket in March 2017.  (Doc 101-2 at 4.)  The declaration does not state that Jutla relied on Atkins' April 2017 Tweet in making any arrangements or expenditures.

   Therefore, plaintiffs' amended complaint would be subject to a motion to dismiss on substantially the same grounds as the Court previously granted dismissal of the SCAC, and granting leave to amend would be futile.

---

[5] Nor does the TCAC make any additional allegations concerning Atkins' Tweet that would invoke the laws of California, Colorado, or Illinois.  (See Docs 104-1; 95 at 12.)  Further, as this Court discussed in its July 10 Order, those states' fraud statutes follow the heightened pleading standard of Rule 9(b), Fed. R. Civ. P.  (Docs 90 at 29; 95 at 12.)  Since, for reasons discussed supra, plaintiffs' TCAC does not meet the Rule 9(b) pleading requirement with respect to Atkins' Tweet, plaintiffs also fail to state claims pursuant to the laws of California, Colorado, or Illinois.

CONCLUSION

Plaintiffs' motions for reconsideration and for leave to file an amended complaint are DENIED.  The Clerk is directed to terminate the motions (Docs 100, 102).


SO ORDERED.


P. Kevin Castel
United States District Judge


Dated: New York, New York
       November 7, 2019